LOTTINGER, Judge.
This is a suit filed by petitioner, Mrs. Bonnie M. Frank, individually and as the duly qualified natural tutrix of her two minor children, for damages resulting from the death of her husband. Defendants are Mavis I. Simons, Earl D. Simons, and their liability insurance carrier, Allstate Insurance Company. The Lower Court granted judgment in favor of defendants and against petitioner and dismissed petitioner’s demand. Petitioner has taken this appeal.
We quote from the excellent reasons for judgment handed down by the Lower Court:
“On or about 12:30 A.M., August 18, 1969, on the Greenwell Springs Road, approximately 3.4 miles east of the city limits of Baton Rouge, Louisiana, there was a one car accident involving a 1966 Volkswa-gon 2-door Fastback Sedan which was owned by Earl D. Simons. At the time of the accident Mavis I. Simons and Ralph W. Frank were occupants in said Volkswagen.
Ralph Frank died of injuries sustained in said accident and this suit is brought by his widow, Bonnie M. Frank, seeking damages for his wrongful death individually and as natural tutrix of her minor children, Randall Paul Frank and Keith Wayne Frank. The defendants are Mavis and Earl Simons and their insurer, The Allstate Insurance Company.
The important material facts surrounding this accident are shrouded in mystery and the Court feels compelled to elaborate in some detail the following facts which it gleaned from the testimony; earlier the day before Mavis and Earl Simons went to the East Louisiana State Hospital at Jackson to see her brother who was confined there because of an alcoholic problem. They returned to Baton Rouge between 4 and S P.M. Mrs. Simons was upset so she told her husband that she wanted to go for a ride to relax. She stopped at a store and bought a six-pack of beer and went across the Mississippi River to the Club Riviera. She bought a beer at the bar and from then on did not remember anything that happened except riding down the Green-well Springs Road in her car with an unknown man behind the wheel.
In the meantime Bonnie and Ralph Frank were in Vinton, Louisiana, where they had gone to help Mrs. Frank’s sister. Ralph Frank left Vinton around 2:30 P.M. to come back to Baton Rouge to go to work. His route would carry him to the Club *766 Riviera and normally it would take a minimum of 3 hours to drive from Vinton to Baton Rouge.
Somewhere along the way Ralph Frank’s path crossed Mavis Simons’ because they were together in the Simons’ Volkswagon when it ran off the road in the rain on the Greenwell Springs Road.
David Keyser of the Louisiana State Police found the automobile off the highway and found evidence that it had flipped over. Apparently when the car left the highway the left front end dug in, and flipped over back to front. The car had been going east but ended up pointing west. Trooper Keyser testified that Mavis Simons smelled strongly of alcohol when he talked with her at the hospital but had no lacerations on her body. He said that Ralph Frank sustained a serious laceration to the top of his head. He found blood behind the driver’s seat. Trooper Albert Ar-bour, Keyser’s partner, also testified that he found blood in back of the front seat.
Dr. Chester Williams examined Frank’s body and said his death was caused by a contusion of the brain. He said the other significant injury was a fractured skull. There were no other lacerations on his body.
The night in question was the same night that Hurricane Camille struck the Gulf Coast of Mississippi and residents of this Parish had been under alert for possible damaging winds and rain. Gulf States Utilities had personnel patroling to report power failures and one of their trucks came upon the scene of the accident shortly after its occurrence. John Gottschalek was in the Gulf States crew and came upon the accident scene and saw the car in the ditch. He saw Mr. Frank standing on the passenger side of the car bleeding from the head. He saw Mrs. Simons in the grass west of the car some 30 feet to 50 feet lying down. He also saw blood on the back seat of the car. The windshield of the Volkswagon had been crushed out. Martin Hebert was also in the Gulf States truck and corroborated the testimony of Mr. Gottschalek reiterating that he found the windshield out and that the man was on the passenger side of the car.
Mrs. Truvie Watts came upon the scene as she was proceeding west on the Greenwell Springs Road and also found the car in the ditch headed towards Baton Rouge. She testified that the man seemed coherent; that she found the six-pack of beer unopened in the car; that a baby seat was in the front seat of the car; that the man was on the right or passenger side of the car and that a woman’s purse was in the middle of the front seat.
To further complicate this matter Mr. Frank’s vehicle was found parked at the Earl K. Long Hospital. Octave Lambert found the car the morning after the accident. The keys were in the ignition.
Berlin Johnson is Bonnie Frank’s brother-in-law (his wife and Ralph Frank were brother and sister.) He testified that when he was notified of the tragedy he called the Simons residence. After identifying himself to Mrs. Simons he was told that she had found Ralph Frank in her car when she left the Carousel; that she couldn’t get him to get out; that she drove up and down the Airline Highway while she tried to get him out of the car; and that finally she started home to get her husband to get him out of the car.
This is all the evidence before the court as to the circumstances leading up to and just after the accident itself. After the accident the automobile was taken to a local wrecking establishment were it was examined the next day by Charles Alsbrook of the Allstate Insurance Company who took pictures which were introduced in evidence as D-2 and D-3. These pictures indicate where the blood was located. Mr. Als-brook testified that the windshield and rear view mirror were gone from the front of the vehicle and that the blood spots started from approximately where the rear view mirror would be and went back diagonally towards the rear. He found some blood *767 stains on the back of the front seat and on the floor of the back seat. He also testified that the driver’s seat was pushed all the way to the back and that the seat was still operative and could move forward and backward. Earl Simons also testified that when he examined the car at the wrecking establishment that the seat was all the way to the rear and that the baby seat was in place between the driver and passenger seat in the front. He said that Mrs. Si-mons always drove with the seat all the way to the front.
Mr. Simons also testified that when he and his wife returned from the hospital at Jackson he noticed his wife was more nervous than usual. He testified that she left home about 6 o’clock and between 7 and 8 o’clock she called and said that she was all right but did not go into any details and he could not tell from where she was calling. He testified that he did not go to work the next day and when his wife returned from the hospital she went directly to bed and stayed there for most of the next day. He could remember no phone calls to his wife and could remember no calls at all before noon.
These are the facts surrounding the accident. There was no direct evidence or testimony which positively put either Ralph Frank or Mavis Simons behind the wheel of the automobile as driver at the time it ran off the road and flipped. The only direct testimony indicating that Mrs. Simons was driving was that of Mrs. Frank’s brother-in-law. The Court places little probative value to Mr. Johnson’s testimony for several reasons. Dr. Lowe, a psychiatrist, testified that Mrs. Simons gave him so many conflicting accounts of how the accident took place that he felt that anything she might have said concerning the accident was completely unreliable. Additionally, the blood stains inside the vehicle indicate that they began in the front seat and continued towards the rear of the car and stopped in the pool that was found on the floor of the back seat. This would indicate that at the time of the accident Ralph Frank was the driver of the vehicle. Counsel for plaintiff in brief suggests to the court that Mr. Frank was on the back seat at the time of the accident but it is difficult for the Court to accept this theory because the baby seat was locked between the two bucket seats and would have to have been unfastened, a very cumbersome task, before he could have gotten into the back seat. Furthermore, and most damaging to plaintiff is the fact that Mr. Frank’s car was found at the Earl K. Long Hospital a relatively short distance from the accident scene.
There was no positive or direct evidence that Mrs. Simons was driving the automobile at the time of the accident. The circumstantial evidence is conflicting at best but this Court feels that it preponderates to the view that Mr. Frank, rather than Mrs. Simons, was driving the vehicle at the time of the accident. It was the plaintiff’s duty to prove her case by a preponderance of evidence. The Court feels that plaintiff failed to establish by a preponderance of the evidence that Mrs. Simons was driving the vehicle at the time the tragedy occurred and must dismiss her suit.”
The petitioner alleges that the fact that Frank was first observed by witnesses on the passenger side of the Volkswagon indicated that he was not the driver of the Volkswagon at the time of the accident.
The evidence reflects that these witnesses arrived on the scene of the accident some four or five minutes after its occurrence. It seems reasonable to assume that if Frank was driving and departed the vehicle on the driver’s side he would make some effort to summon assistance. Assistance was not on the driver’s side of the car but would have been near the road or the passenger side of the car. At the time Frank was first observed by these witnesses he was between the car and the highway. The evidence further reflects that he was capable of walking as his wallet was found the next day some distance away from the automobile.
*768 Although petitioner contends that Frank was in the rear seat of the Volkswagon at the time of the accident, the evidence reflects that the blood was in the center and driver’s side of the Volkswagon. Blood was found on the rear of the driver’s seat, and a pool on the back floor. This was an older model of Volkswagon which did not have a head rest, and it is apparent, or at least can be reasonably assumed, that following the accident the bleeding from the head of Frank caused the blood to go to the back floor of the Volkswagon. Furthermore, the evidence reflects that Frank was bleeding profusely following the accident and that Mrs. Simons had no lacerations which would cause her to bleed.
Another significant factor is the fact that Frank apparently was in his automobile prior to his entering the Simon vehicle. His vehicle was later found in a Charity Hospital parking lot and was causing a parking hazard. It can logically be assumed that if Frank was attempting to help Mrs. Simons he would have either:
1. Driven her automobile because of some incapabity caused by a combination of drinking or drugs, or,
2. He would have followed Mrs. Si-mons in his own automobile to insure her safe arrival at home.
It is not logical to think that Frank would have entered the Simons vehicle at the Club Riviera, as petitioner would have us believe as the hospital parking lot was some distance away.
In the case of Dartez v. Continental Casualty Company, La.App., 229 So.2d 385, the Court was faced with a similar mysterious problem of attempting to establish the identity of the driver of an automobile involved in a one car collision. In this case, both occupants of the vehicle claimed that the other was driving. The trial court held that the plaintiff failed to prove by a preponderance of the evidence, and the appellate court affirmed.
We are in agreement with the decision of the lower court to the effect that the petitioner has failed to prove by a preponderance of the evidence that Mrs. Simons was the driver of the Volkswagon at the time of the accident.
For the reasons hereinabove assigned, the judgment of the lower court will be affirmed, with all costs of this appeal to be paid by petitioner.
Affirmed.